UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**      *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

========================================================================

Present:   The Honorable <u>Brianna Fuller Mircheff, United States Magistrate Judge</u>

|  |  |
|:---:|:---:|
| <u>Christianna Howard</u> | <u>N/A</u> |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Petitioner | Attorneys Present for Respondent |
| N/A | N/A |

**Proceedings:     (In Chambers) Order Granting Petition (ECF 1)**

Petitioner Cintia Garcia-Arce filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 on June 17, 2026. (ECF 1.) For the reasons stated below, the Petition (ECF 1) is **granted**.

## I.      Factual Background

Petitioner is a noncitizen who is currently detained at the Adelanto Detention Facility, within the Central District of California. (ECF 1 ("Pet.") ¶¶ 1, 3.) She entered the United States in November 2022. (Pet. ¶ 1.) She was detained near the border and was released on humanitarian parole with instructions to report to the nearest ICE office within 60 days. (Pet. ¶ 2; Pet. Ex. 2.) She did so, reporting to the Los Angeles ISAP office in January 2023. (Pet. ¶ 3.) She continued to check-in between then and May 2024, when she was issued a notice to appear and an order of release on recognizance. (Pet. ¶ 4.)

Petitioner appeared for her first hearing in August 2024 without incident, and her case was reset for February 2025. (Pet. ¶ 8.)  Petitioner moved, and thus never received the updated hearing notice, and was, accordingly, deported in absentia on September 10, 2025. (Pet. ¶¶ 11, 12.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**        *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

================================================================

Unaware of the *in absentia* order, Petitioner voluntarily appeared to the ISAP office to update her address. (Pet. ¶ 12.) After waiting for hours, she was told she was being arrested. (Pet. ¶¶ 13-14.) Petitioner was not provided with a bond hearing or opportunity to contest her detention before being detained. (Pet. ¶ 27.)

Once she was taken into custody, an immigration judge vacated the *in absentia* order and set her removal case for a hearing. (Pet. ¶ 19.)

In January 2026, after being held in custody for three months, Petitioner filed a first writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet. ¶ 22.) In that first petition, Petitioner sought release under a procedural due process theory, and in the alternative, requested a bond hearing. *See* Petition, *Garcia Arce v. Janecka*, 5:26-cv-70-SSS-BFM (C.D. Cal. Jan. 8, 2026). After Respondent conceded Petitioner's eligibility for a bond hearing, Petitioner withdrew her due process claim. Order, *Garcia Arce v. Janecka*, ECF 9 (C.D. Cal. Jan. 21, 2026). The Court thereafter granted Petitioner a bond hearing under *Maldonado Bautista*. (Pet. ¶ 23.)

At the bond hearing held on January 30, 2026, the Immigration Judge denied Petitioner bond, finding Petitioner was a flight risk. (Pet. Ex. 4 (IJ bond order).) Later, in June 2026, Petitioner sought and was denied a *Rodriguez* hearing; the IJ found that Petitioner had already had a detention hearing and, in the alternative, concluded that there was no material change in circumstances that would justify revisiting the prior custody findings. (ECF 9 ("Answer") Ex. A.)

Petitioner filed the instant petition on June 17, 2026, alleging, among other things, the due process claims she had previously dismissed. (Pet. ¶¶ 66-91.)

Page **2** of **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**      *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

===================================================================

## II.    Analysis

Petitioner's most forceful claim is that DHS's initial decision to take her into detention violates due process and justifies her release. (Pet. ¶¶ 66-73.)

Time and time again, courts in this District have found claims like this one meritorious. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

### 1.    *Protected liberty interest*

On the first point, the Court finds that Petitioner had a protected liberty interest in remaining at liberty in the community absent sufficient justification for her re-detention.

Conditional release from physical restraint may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). Once an individual is granted conditional release, therefore, she may have a protected liberty interest in remaining in the community—and an attendant right to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**        *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

======================================================================

procedural protections before that liberty is revoked. *See id.* (due process requires pre-deprivation hearing before revocation of pre-parole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). In deciding whether a specific form of conditional release gives rise to a protected liberty interest, courts compare the form of conditional release at issue with the parolee's liberty interest as described in *Morrissey v. Brewer*, a seminal case in this area. *See González-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole enables a parolee "to do a wide range of things" available to individuals who have never been convicted of any crime—to live at home, work, be with his friends and family, and "form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," including monitoring and requiring authorization to work and travel, the parolee's "condition is very different from that of confinement in a prison." *Id.* Moreover, a parolee "relie[s] on at least an implicit promise that parole will be revoked only if she fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee," and as such, a parolee possesses a protected interest in his continued liberty. *Id.* at 481-84.

Petitioner was released pending completion of her removal proceedings. Her release was an implicit promise that she would be able to stay in the community for the duration of her administrative proceedings so long as she complied with the conditions of her release. Her conditional released permitted her to live in the community with his partner and their two-year-old son. (ECF 1-3 at 2.) The Court thus easily concludes—as have many courts in this Circuit—that once Petitioner was released on bond, she gained a protected

Page 4 of **12**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM                **Date:**   July 10, 2026

**Title:**        *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

========================================================================

liberty interest in remaining out of custody. *E.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody"); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (finding that "the government's decision to release an individual [from immigration custody] creates an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release") (cleaned up); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

      2.      *Process owed in connection with re-detention*

Given that Petitioner has a protected liberty interest in her conditional release, the question is what process she is owed before the government would take that liberty interest away. Petitioner claims that due process required process *before* she was taken into custody. (Pet. ¶ 71.) The Court agrees.

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022) (assuming, without deciding, that *Mathews v. Eldridge* applies in immigration detention context, and collecting authority applying *Mathews* to immigration detention). The *Mathews* test balances three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM        **Date:**  July 10, 2026

**Title:**        *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

=====================================================================

procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. Each of the three *Mathews* factors supports Petitioner's constitutional right to process *before* she was re-detained.

As to the first factor, and as set out in the prior section, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in her home, supporting herself, caring for her young son, and maintaining her relationships in the community. *See Ortega*, 415 F. Supp. 3d at 970 (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second *Mathews* factor, there is a significant risk that the government erroneously deprived Petitioner of that liberty interest in the absence of pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) And where a petitioner did not receive any pre-deprivation custody hearing or other process in connection with the revocation of her parole, "the risk of an erroneous deprivation [of liberty] is high." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Indeed, Respondents have not identified any process in place to ensure that individuals in Petitioner's position are not taken into custody improperly.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**       *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

======================================================================

Civil immigration detention is constitutionally permissible only to prevent flight or protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. Evaluation of the appropriateness of detention under § 1226(a) is keyed to those same two factors. *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). It was those factors that were necessarily found when Petitioner was initially released on her own recognizance. (ECF 1-2 at 3); *see Noori v. LaRose*, 807 F. Supp. 3d 1146, 1167(S.D. Cal. 2025) ("In general, '[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.'"); *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at \*6 (C.D. Cal. Aug. 26, 2025) (citation omitted) (a petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"). And once she was released, she had a liberty interest "in remaining at liberty unless she no longer meets those criteria." *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185, at \*13 (E.D. Cal. Sept. 5, 2025) (cleaned up). Respondents have not shown that anyone, let alone a neutral decisionmaker, considered whether there were changed circumstances that warranted Petitioner's re-detention, or that there was any process in place to make such a finding before she was taken into detention.

Finally, Respondents have not articulated any countervailing government interest—the third and final *Mathews* factor—that supports providing this process only after Petitioner's parole has been revoked. Due process "usually" requires a hearing *before* the State deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. *Id.* at 128. But

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**       *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

=====================================================================

neither of those exceptions appears to apply here. Respondents do not argue that quick action was necessary here.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." *Ortega*, 415 F. Supp. 3d at 970; *see also Morrissey*, 408 U.S. at 483 (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the *Mathews* factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by *no* process—violated the Due Process Clause.

## III.   Harmlessness

Respondents do not dispute any piece of the due process analysis set out above. Instead, they argue that Petitioner's claim is "mooted" by her subsequent bond hearing(s). (Answer at 3.) Mootness is the wrong fit for Respondents' argument—Petitioner remains in custody, and the Court could grant her the relief she seeks. *Nw. Env't Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (a claim is moot where there is no "present controversy as to which effective relief can be granted"). Accordingly, her claim is not "moot."

A better fit for Respondents' arguments would be the doctrine of harmlessness—that is, that even if there were a constitutional violation in Petitioner's initial detention, that such violation is harmless because a later neutral decisionmaker deemed her detention appropriate. There are three reasons, however, that harmlessness does not apply here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**    5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**       *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

====================================================================

First, Respondents do not argue that any error is harmless. Arguments that are not "coherently develop[ed]" are forfeited—a rule that is routinely applied against parties far less sophisticated than the United States. *See Hernandez v. Garland*, 47 F.4th 908, 916 (9th Cir. 2022).

Second, many courts to have looked at the issue have found that a post-detention bond hearing does not undo the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. *See, e.g., Domingo v. Kaiser*, No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); *Hasratyan v. Bondi*, No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); *Saballos Rosales v. Noem*, No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting TRO and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing *Hasratyan*); *Charan S. v. Warden, CA City*, No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months"); *see also Riveros-Sanchez v. City of Easton*, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

Third, to the extent that such error could ever be harmless, Respondents have not shown that any constitutional error was harmless on the facts of this case. The pre-deprivation hearing that due process requires would have given

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**     5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**        *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

=====================================================================

Petitioner the benefit of being treated as an individual whom the immigration court had already found appropriate for release on her own recognizance, who had showed up for her ISAP appointments and several court hearings since then,[1] and who had since given birth to a U.S. citizen child, providing a significant additional tie to the community. As described above, the relevant question should have been whether there were changed circumstances that warranted revisiting the prior finding and taking her into custody. Instead, Petitioner was treated as a detained individual seeking custody redetermination. The prior finding that she was suitable for release and her appearances over the prior three years did not even rate in the IJ's discussion of the equities. (ECF 1-4 at 4.) The Court cannot factually conclude, on this record, that the due process violation was rendered harmless by the subsequent bond in these unique circumstances. *See Mumaev v. Semaia*, No. 5:25-cv-03409-FLA (MAR), 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026) (ordering release of an individual who was provided a bond hearing months after being wrongfully detained; "Respondents, likewise, do not establish the Immigration Court considered the validity of Petitioner's detention before denying bond—let alone whether a material change in his circumstances warranted the *de facto* revocation of his parole and re-detention.").

Any of these three reasons would be enough, even without reaching Petitioner's claim that the bond hearing she received was faulty. Together, they are more than adequate to decline to find the constitutional violation harmless here.

---

[1] While Petitioner missed one court hearing, as reflected in the apparent issuance of an *in absentia* order, the immigration court later vacated that order (Pet. ¶ 19), necessarily finding that there was a good reason for her failure to appear. *See* 8 U.S.C. § 1229a(b)(5)(C).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM          **Date:**  July 10, 2026

**Title:**       *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

==================================================================

## IV.   Exhaustion

The only other argument Respondents make is one premised on failure to exhaust (Answer at 4-6), but that argument is off base. Respondents argue that Petitioner should have appealed the adverse decision on her *bond hearings* (Answer at 4-6), but Petitioner's challenge is to the violation of her procedural due process rights, not to the result of her bond hearing. Constitutional claims are generally excepted from the exhaustion requirement, because neither IJs nor the BIA are permitted to consider constitutional challenges to the statutes they administer. *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013). Respondents offer no basis not to apply that general rule here.

## V.   Appropriate Remedy

As has been found in countless similar cases in this Circuit, the appropriate remedy in such cases is to order Petitioner placed in the position she would have been absent the due process violation—that is, she should be released from custody on the conditions that were initially imposed. *E.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); *Jasbin v. Warden*, No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that petitioner was only entitled to bond hearing as Maldonado Bautista class member); *Prior v. Chestnut*, No. 1:25-cv-01131-JLT-EPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

## VI.   Conclusion

Accordingly, the Petition (ECF 1) is granted. Petitioner (A# 246-404-249) is ordered immediately released on the conditions of parole previously imposed. Petitioner's counsel shall file a status report confirming Petitioner's release

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

**Case No.:**   5:26-cv-03367-BFM        **Date:**  July 10, 2026

**Title:**      *Cintia Karina Garcia-Arce v. Todd Blanche, et al.*

================================================================

within three days of her release from custody; if release is delayed for any reason, Petitioner shall promptly notify the Court.

Upon receipt of confirmation that Petitioner has been released, judgment will issue and the Court will close the case.

**IT IS SO ORDERED**

cc:    Counsel of Record

Initials of Preparer:      ch